[Cite as *In re Ky'J.C.*, 2014-Ohio-4727.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


In re Ky'J.C., Ky'M.C., Ke.C.                    Court of Appeals No. L-14-1100

                                                 Trial Court No. JC 12220629


                                                 **DECISION AND JUDGMENT**

                                                 Decided:  October 22, 2014

                        * * * * *

Stephen D. Long, for appellant.

Jill E. Wolff, for appellee.

                        * * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common

Pleas, Juvenile Division, that terminated the parental rights of appellant mother and

granted permanent custody of her children Ky'J.C., Ky'M.C. and Ke.C. to appellee Lucas

County Children Services Board ("the agency").  For the following reasons, the judgment of the trial court is affirmed.

**{¶ 2}** Appellant sets forth the following single assignment of error:

The trial court erred in granting appellee Lucas County Children Services Board's motion for permanent custody as the decision was against the manifest weight of the evidence.

**{¶ 3}** The agency first became involved with this family on January 12, 2012, when a complaint in dependency and neglect was filed regarding all three children.  At that time, Ky'J.C. was six years old, Ky'M.C. was two years old and Ke.C. was nine months old.  On that same date, a shelter care hearing was held and the agency was granted interim temporary custody of the three children.  On March 19, 2012, the children were adjudicated neglected and temporary custody was awarded to the agency.[1]

**{¶ 4}** At the time the complaint was filed, the agency's concerns as to mother involved substance abuse and mental health issues, parenting abilities and a lack of stable housing.  Case plan services were offered to the family beginning January 2012.  Services offered to mother included drug and alcohol assessments and treatment, mental health assessments and treatment, case management services and visitation.  A guardian ad litem was appointed for the children, who were placed in foster care together.

---

[1] Each child has a different biological father, none of whom participated in case plans. During the pendency of the case in the trial court, at least two of the fathers' whereabouts were unknown.  None of the fathers have filed an appeal from the trial court's judgment.

2.

{¶ 5} On November 27, 2013, the agency filed a motion for permanent custody of the children. The permanent custody hearing was held on February 20 and 21 and March 4, 2014. Mother was present and represented by counsel. The trial court heard testimony from two agency caseworkers assigned to the family and the children's guardian ad litem.

{¶ 6} Caseworker Barb Cummins testified that she worked with the family from October 2011 until January 2014. The family came to the attention of the agency in September 2011 when mother had a dispute with a boyfriend and threatened to burn down her apartment with the children inside. The agency worked with mother as a non-custody case from September 2011 until January 2012, when the oldest child—then age six—reported being left home alone with the two younger siblings who were then only two years old and four months old.

{¶ 7} Case plan services were developed for mother. Following a mental health assessment, mother was diagnosed with schizoaffective disorder, bipolar type, and with marijuana and alcohol abuse. Mother attended treatment, which she completed in March 2013. However, during and after treatment, mother continued to use drugs, with positive drug screens and no-shows. Cummins' testimony included details as to the following: no-shows for drug screens in February and September 2012, September 2013 and January 2014; positive drug screens (marijuana) in June 2012, November and December 2012, January 2013, and January and February 2014; a conviction for possession of drug paraphernalia in May 2013; pleas to theft and possession of drug paraphernalia in August

3.

2013; a theft charge in Bowling Green, Ohio, in November 2013; and two outstanding warrants at the time of the permanent custody hearing. Mother did not inform the agency of the charges and convictions. Mother failed to take responsibility for her positive drug screens and had a variety of explanations, including "being around others who smoked" and "eating a cupcake laced with [marijuana]." Mother also could not provide proof of attendance at AA meetings.

{¶ 8} Cummins testified that mother was inconsistent about taking her mental health medication and that mother admitted going off the medication. As to visitation with the three children, Cummins testified that from her observations visitation went well when held at the agency. She did receive information from other staff that on several occasions mother yelled at the children and allowed them to leave the room without supervision. However, once mother was permitted to have supervised visitation off-site, her participation was sporadic and she did not see her children between January 9 and early April 2013. When mother was informed she could have the children for a weekend in October 2013, she reported she could not take them because she was too busy.

{¶ 9} Cummins further testified that the children have been in foster care for 25 of the past 25 months. They are placed together and are doing well with caregivers who are able to meet all of the children's needs. Cummins stated that she conducted a home study on maternal grandmother and had concerns due to an open investigation in Wood County involving domestic violence and an "indication of physical abuse" in 2007. Cummins did not approve the home study. The caseworker also expressed concern about housing

4.

because the rent for the apartment her mother rented for her in Bowling Green exceeded appellant's income.

{¶ 10} Caseworker Tymeeka Gipson testified that when she received the case in January 2014, the fathers' whereabouts were unknown. She stated that none have contacted her or the children. Gipson expressed concern over mother's positive drug screens and no-shows due to the harmful effect of drug use on her mental stability, possible adverse interaction with her prescribed medications, and mother's inability to maintain a generally sober lifestyle. Gipson testified that the children appeared to be comfortable in their foster home and seemed to be bonded with one another and with their foster parent.

{¶ 11} Sharon Fitzgerald, the guardian ad litem, testified as to her recommendation that the agency receive permanent custody of the children. She testified that her review of the case indicated that little had changed over the 25 months since the agency received temporary custody. Fitzgerald noted that mother continued to have problems providing for her own needs. She stated that the oldest sibling, who was eight years old at the time of the hearing, did a lot of parenting at visitations with mother and told her that it was his job to take care of his mother and younger siblings.

{¶ 12} Appellant testified on her own behalf and called several additional witnesses: her mother, a family visit monitor at the agency, a parent educator employed by the agency, and a drug and alcohol counselor. Appellant's mother testified that she located an apartment for appellant in Bowling Green, signed the lease and made a deposit

5.

of the first month's rent. She stated that mother experiences overwhelming sadness and withdrawal when she does not have her children with her.

{¶ 13} Rhonda Harris, a family visit monitor at LCCS, testified that she monitored eight or ten of mother's visits. Harris stated that mother and children generally interacted well. On a few occasions she had to remind mother not to use her phone during visits. At times, mother appeared a little "edgy" when she arrived for visitation. Harris described occasions when mother appeared not to have control and was "right there at the edge" and needed to step back. She also observed instances where the children were a little out of control and it appeared mother did not know how to handle the situation.

{¶ 14} Madeline Deveraux, a parent educator with the agency, testified that mother attended ten out of twelve required classes and successfully completed the program. Mother received credit for seven out of eleven of the topics. She demonstrated three out of seven "coping with stress" skills and eight out of twelve "coping with children" skills. Mother did not receive credit for empathy, positive attention, using rules, consequences or managing anger.

{¶ 15} Donita McGuire, a drug and alcohol counselor with Unison, testified that she was mother's primary therapist from May 2012 until March 2013. Using individual and group counseling, McGuire worked with mother on drug and alcohol issues, anger issues and managing her mental health symptoms. McGuire stated that mother missed numerous appointments with her psychiatrist and struggled with compliance with her

6.

medications.  McGuire expressed concern that mother's marijuana use might counteract those medications.

{¶ 16} Mother's testimony essentially confirmed that of the agency caseworkers. She stated she had stopped going to AA and that her various relapses involved marijuana. Mother further testified that she did not believe her oldest child's claim of sexual abuse, despite the fact that the child described the abuse in great detail.  She further admitted that she had not consistently taken her medications.

{¶ 17} On April 7, 2014, the trial court filed a detailed judgment entry in which it ordered that the parental rights of appellant as to the three children be terminated and that permanent custody be granted to Lucas County Children Services.  It is from that judgment that mother appeals.

{¶ 18} In support of her sole assignment of error, mother asserts that the trial court's decision was against the manifest weight of the evidence.  Mother states that she has been able to abstain from using marijuana for long periods of time "between relapses" and that there was no testimony that she was under the influence of marijuana at any time she was with her children.  She asserts that she is "normally compliant" with taking her medications and has obtained stable housing with her mother as cosigner on the lease.  Mother also disputes testimony that she did not interact well with her children during visitations and asserts that such evidence does not support removal of the children from the home or require any remedial measures.

7.

{¶ 19} In granting a motion for permanent custody, the trial court must find that one or more of the conditions listed in R.C. 2151.414(E) exist as to each of the child's parents. If, after considering all relevant evidence, the court determines by clear and convincing evidence that one or more of the conditions exists, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1). Further, pursuant to R.C. 2151.414(D), a juvenile court must consider the best interest of the child by examining factors relevant to the case including, but not limited to, those set forth in paragraphs 1-5 of subsection (D). Only if these findings are supported by clear and convincing evidence can a juvenile court terminate the rights of a natural parent and award permanent custody of a child to a children services agency. *In re William S.*, 75 Ohio St.3d 95, 661 N.E.2d 738 (1996). Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 20} The record reflects that numerous caseworkers and counselors, all of whom spent a significant amount of time with appellant and the children for over two years, testified that mother had failed to remedy the conditions that initially required removal of the children from the home. During the pendency of this case, mother experienced many substance abuse relapses, had a history of failing or refusing to drop drug screens, had a history of court involvement for theft offenses as well as possession of drugs and drug

8.

paraphernalia, had a history of failing to properly take her medications, and was inconsistent with arranged visitations with her children.

{¶ 21} The trial court found, pursuant to R.C. 2151.414(E)(4), that the children could not be placed with any of their parents within a reasonable time and should not be placed with their parents for several reasons. Specifically, the trial court found that mother continued to have involvement with the criminal justice system, her mental health was unstable, she continued to test positive for marijuana during the course of the permanent custody trial, and the quality of her visitation with the children was poor. The court found that mother's mental health and substance abuse issues made her unable to parent at the time, and as anticipated within one year from the hearing date, and that mother showed a lack of commitment to the children. The trial court further found that the children had been removed from their home for approximately 25 months and were in need of a permanent plan. The court noted that the children were in a legally secure placement where they were thriving.

{¶ 22} The trial court found that the agency had made reasonable efforts to prevent the need for removal of the children and that those efforts were unsuccessful. The court concluded that it was in the children's best interest to award the agency permanent custody.

{¶ 23} Based on all of the foregoing, we find that the trial court's decision granting permanent custody of Ky'J.C., Ky'M.C and Ke.C. to the agency was supported

9.

by clear and convincing evidence.  Accordingly, appellant's sole assignment of error is not well-taken.

{¶ 24} On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed.  Costs of this appeal are assessed to appellant pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____

_____
JUDGE

James D. Jensen, J. _____
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.